# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ISABEL C. MARIN,

       Plaintiff,

v.                                                                    CIV 18-0375 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Brief in Support of Motion to Remand or Reverse for Payment of Benefits, or in the Alternative, for Rehearing (*Doc. 19*), filed on March 17, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 6*; *9*; *11.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

**I.**     **Procedural History**

Ms. Isabel C. Marin (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

Act on May 19, 2014. Administrative Record[2] (AR) at 157-58. Plaintiff alleged a disability onset date of May 19, 2014. *See* AR at 157.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 61-73) and on reconsideration (AR at 74-89). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 102-03. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 34-60. ALJ James Bentley issued an unfavorable decision on February 15, 2017. AR at 12-33. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 155-56), which the council denied on February 20, 2018 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

---

[2] Document 14-1 comprises the sealed Administrative Record. *See Doc. 14-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work (PRW). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Bentley found that Plaintiff "has not engaged in substantial gainful activity since" her alleged onset date. AR at 17 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: asthma, degenerative disc disease of the lumbar spine with stenosis, depression, and mood disorder." AR at 18 (citing 20 C.F.R. § 404.1520(c)). ALJ Bentley also noted the following nonsevere impairments that "do not impose more

---

[3] ALJ Bentley first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2020." AR at 17.

3

than a minimal restriction on [her] ability to perform basic work activities": "degenerative disc disease of the cervical and thoracic spine, osteoarthritis of the left shoulder, and urinary frequency." AR at 18.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ determined that Plaintiff

> has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that [she] may occasionally climb ramps and stairs; is unable to climb ladders, ropes and scaffolding; may occasionally balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme heat, cold and wetness; must avoid even moderate exposure to dust, fumes and poorly ventilated areas; can remember, understand and carry out detailed, but not complex tasks; may perform no overhead work; and requires a sit or stand option, defined as a temporary change in position from sitting to standing and vice versa, for purposes of comfort, and with no more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace or production.

AR at 21. The ALJ determined that Plaintiff is capable of performing her PRW as a Certified Nursing Assistant (CNA). AR at 28. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 19, 2014, through the date of [the ALJ's] decision." AR at 29 (citing 20 C.F.R. § 404.1520(f)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161,

4

1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff contends that the following issues require reversal: (1) the ALJ erred in evaluating her subjective complaints of pain and in determining she is capable of light work with limitations; (2) the ALJ failed to provide specific findings of fact regarding her PRW pursuant to SSR 82-62, 1982 WL 31386 (Jan. 1, 1982); and (3) the ALJ erred in finding that she could return to her PRW given her RFC. *Doc. 19* at 4-12.

### A. The ALJ's evaluation of Plaintiff's subjective complaints and determination that she can perform light exertional work with limitations is supported by substantial evidence.

Plaintiff first argues that ALJ Bentley made a number of errors at Step Four in evaluating her subjective complaints of pain and in determining that Plaintiff can perform limited light exertional work. *See Doc. 19* at 4-9.

Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

6

Here, ALJ Bentley summarized Plaintiff's testimony and self-reports regarding the pain and other symptoms she experiences due to her degenerative disc disease of the lumbar spine with stenosis. AR at 22-28. The ALJ also thoroughly reviewed the evidence of record and concluded that "the objective medical evidence is not consistent with the alleged intensity, persistence and limiting effects of [Plaintiff's] symptoms arising from her degenerative disc disease." AR at 24. Specifically, the ALJ found that her "medical records document only a conservative and routine treatment history[,]" "[h]er treatment notes indicate that [the treatment] measures have been effective in alleviating [her] symptoms even though her underlying condition has slightly worsened[,]" and "the clinical findings and observations documented by treating providers have been mild throughout the period under review." AR at 24.

Plaintiff argues that the ALJ did not adequately evaluate her subjective complaints using the technique mandated in SSR 16-3p. *Doc. 19* at 4-9. The Commissioner contends that the ALJ sufficiently evaluated Plaintiff's subjective complaints under the regulations and that his decision is supported by substantial evidence. *Doc. 21* at 4-11. The Court agrees that the ALJ gave thoughtful reasons and finds that his determination regarding Plaintiff's subjective complaints is supported by substantial evidence. Specifically, ALJ Bentley discussed:

<u>Daily activities</u>: The ALJ reviewed Plaintiff's account of her daily activities. She cares for "her Chihuahua, cooks, performs light household chores, and is able to grocery shop, although she primarily relies on her daughter." AR at 26 (citing AR at 48, 250-65). She "attend[s] family gatherings and regularly goes to church[,]" she "does yoga for exercise three to four times a week[,]" and she "has continued working throughout the

period under review, performing what the [VE] testified is light work activity" approximately 25 hours per week. AR at 26 (citing AR at 254, 262, 510 (Ex. 6F), 179-228). She drives to work approximately 25 minutes each direction. AR at 26. Her pain does cause "some limitations in dressing and showering . . . ." AR at 26.

The location, duration, frequency, and intensity of pain or other symptoms: ALJ Bentley reviewed Plaintiff's allegations of pain and other symptoms. "She testified that she has constant back pain" that "radiates to her left and right legs" with the pain in her left leg worse and constant. AR at 22. She "experiences numbness and tingling in the left leg all the way down to her toes." AR at 22. "She reported that she drags her left leg slightly[,] . . . [and] she has leg cramps at night, which interfere with her sleep" AR at 22 (citing AR at 250, 258).

The ALJ noted Plaintiff's complaints of pain to her medical providers, including "tenderness to palpation in her lower spine and reported pain[,] decreased sensation in her left leg[,]" and "difficulty with extension of her back" at a May 2014 appointment with orthopedic specialist Andrew Paterson, M.D. AR at 23 (citing AR at 329). In July 2015, Plaintiff reported "tenderness to palpation in the lumbosacral spine and . . . symptoms of radiation to the left leg." AR at 23 (citing AR at 489). Plaintiff "denied any weakness or tingling in her legs . . . with no tenderness or swelling" in April 2016. AR at 23 (citing AR at 510). After six physical therapy visits, Plaintiff "reported only 'discomfort' down into her lower extremities . . . ." AR at 23-24 (citing AR at 533). She again reported back pain in July 2016. AR at 24 (citing AR at 486).

The type, dosage, effectiveness, and side effects of any medication: The ALJ noted that Plaintiff takes pain medication to treat her back and leg pain. AR at 22. Medical

records showed that she tried Gabapentin in May and July 2014. AR at 23 (citing AR at 329, 349). Dr. Paterson prescribed Lyrica in July 2015. AR at 23 (citing AR at 488). "In April 2016, [Plaintiff] reported that Naproxen and Gabapentin had failed to provide her with back pain relief." AR at 23 (citing AR at 509-510). Plaintiff stated in June 2016 that Tramadol had been beneficial in relieving some discomfort down into her lower extremities. AR at 24 (citing AR at 533).

Treatment other than medication: The ALJ noted that Plaintiff's "treatment during the period under consideration has focused exclusively on [her] lumbar spine." AR at 18. The ALJ noted several occasions on which Plaintiff received epidural steroid injections. *See, e.g.*, AR at 23 (citing AR at 441-42 (May 30, 2014), 368-70 (Sept. 8, 2014), 489 (July 8, 2015)), 24 (citing AR at 486 (July 20, 2016 order for injection)). The ALJ also recorded Plaintiff's treatment with Voltaren gel (AR at 23 (citing AR at 489)) and physical therapy (AR at 23 (citing AR at 533)).

Measures Plaintiff uses to relieve pain and symptoms: The ALJ noted that Plaintiff uses a grabber to pick up things. AR at 22 (citing AR at 251).

Plaintiff argues that the evidence the ALJ relied on "does not accurately reflect the constancy and severity of [her] chronic back pain." *Doc. 19* at 7. Plaintiff provides a chart of the medical records relevant to her lumbar pain. *See Doc. 19* at 14-19. Of the 21[4] medical records in Plaintiff's chart that are relevant to her back and leg pain, the

---

[4] There were 24 rows of records in Plaintiff's chart, but two of the records were identical (*see Doc. 19* at 16 (citing AR at 351 & 422 (the same record of a June 6, 2014 visit at the University of New Mexico Department of Orthopaedics Division of Spine Surgery)), and two of the records related to Plaintiff's complaints of shoulder pain or depression and are thus irrelevant to the analysis regarding Plaintiff's back and leg pain (*see id.* at 14 (citing AR at 365 (Sept. 8, 2014 x-ray of left shoulder)), 16 (citing AR at 338 (May 9, 2014 treatment note discussing depression))).

9

ALJ discussed all but four of them:[5] (1) a July 9, 2014 radiology report that "indicat[ed] degenerative disc disease" (*see Doc. 19* at 14 (citing AR at 366)); (2) a July 8, 2015 lumbar x-ray that showed "[t]ransitional lumbosacral anatomy with sacralization of L5" and "[m]ultilevel degenerative disc disease most prominent at L3-L4 and L4-5, not definitely changed" (*id.* at 15 (quoting AR at 502-03)); (3) a June 6, 2014 treatment record that recorded Plaintiff's complaints of "lower back pain numbness" that limits Plaintiff's ability to walk, bend, lift, and move, weakness and numbness in her left leg, an ability to sit for 10-20 minutes, and a complaint that pain is 6-7/10 (*id.* at 16 (quoting AR at 351, 422)); and (4) a July 9, 2014 treatment record that recorded Plaintiff's past complaints of pain in her hips, lower back pain, numbness in left leg and foot and current complaints of back pain and numbness in left leg and foot with pain at 4-7 (*id.* (citing AR at 423)). While he did not cite these records, ALJ Bentley did find that

---

[5] The Court will identify where ALJ Bentley discussed each of the treatment records. While Plaintiff does not number the entries on her chart, she does identify each row by a record page number. The Court will do the same:
(1) AR at 350: This record shows the procedure of a May 30, 2014 CT guided lumbar epidural steroid injection. The ALJ discussed the physician's report of the same May 30, 2014 procedure. *See* AR at 23 (citing AR at 441).
(2) AR at 367-68: The ALJ discussed this March 21, 2014 lumbar MRI at AR at 22 and 23.
(3) AR at 368: The ALJ discussed this September 8, 2014 lumbar epidural steroid injection at AR at 23.
(4)-(5) & (10)-(11) AR at 462, 464, 460: The ALJ discussed this November 4, 2014 motor vehicle accident and resulting medical records at AR at 18, 23.
(6) AR at 502: The ALJ discussed this July 20, 2016 lumbar x-ray at AR at 24.
(7) AR at 328: The ALJ discussed this July 9, 2014 treatment record at AR at 22.
(8) AR at 388-89: The ALJ discussed this September 8, 2014 treatment record at AR at 18.
(9) AR at 448: The ALJ discussed this October 31, 2014 consultative examination at AR at 27.
(12) AR at 486: The ALJ discussed this July 20, 2016 medical record at AR at 22, 24.
(13) AR at 487-88: The ALJ discussed this September 30, 2015 record at AR at 23, 24.
(14) AR at 488-89: The ALJ discussed this July 8, 2015 record at AR at 23.
(15) & (17) AR at 530-31, 540-41: The ALJ discussed this physical therapy intake note and initial evaluation form at AR at 26.
(16) AR at 533: The ALJ discussed this physical therapy discharge note at AR at 23.

10

degenerative disc disease was a severe impairment (AR at 18), and Plaintiff fails to explain how the July 8, 2015 x-ray adds to the evidence the ALJ discussed. Moreover, the June 6, 2014 and July 9, 2014 treatment records are largely duplicative of the subjective complaints that the ALJ did discuss. The Court finds that the four remaining records do not overwhelm the substantial evidence that supports the ALJ's findings with respect to Plaintiff's subjective complaints of pain.

Plaintiff next contends that while the ALJ noted that she "has only received conservative and routine treatment, . . . [t]he record does not indicate that if [she] were to follow an unconservative and non-routine treatment, her ability to work would be restored." *Doc. 19* at 7. Treatments of symptoms are, however, "an important indicator of the intensity and persistence of [a claimant's] symptoms[,]" *see* 20 C.F.R. § 404.1529(c)(3), and a record of conservative treatment provides a valid reason for an ALJ to discount complaints of pain. *See, e.g., Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015). She also asserts that "[t]here is no evidence the ALJ considered [her] persistent attempts to obtain relief from her symptoms." *Id.* at 8. While the ALJ may not have explicitly commented on her persistent attempts to find relief, the Court cannot say that this omission is enough to outweigh the evidence the ALJ relied on to make his determination.

Plaintiff asserts that the ALJ erred by "fail[ing] to explain and support with substantial evidence which of [her] testimony [he] did or did not believe and why." *Doc. 19* at 8. The Court disagrees. ALJ Bentley specified several instances of Plaintiff's testimony he found unsupported by the record. For example, he stated that Plaintiff's complaints of sleeplessness were not documented in the record (*see* AR at 24), and

11

that her testimony regarding dragging her left leg was contradicted by medical records that showed she "maintained a normal gait, full strength, and full sensation" and did not require "any assistive devices to ambulate" (AR at 24). The ALJ also noted that, contrary to Plaintiff's reports of symptoms, "the clinical findings and observations documented by treating providers have been mild throughout the period under review." AR at 24.[6]

Plaintiff disagrees with the ALJ's statement that she leads a fairly active lifestyle. *Doc. 19* at 9. Again, however, the ALJ supported his finding with substantial evidence. He acknowledged that while Plaintiff "has some limitations in dressing and showering due to pain symptoms," she is able to care for her dog, cook, shop and do light chores, attend family gatherings and church, and practice yoga three to four times a week. AR at 26 (citations omitted). The ALJ also noted that Plaintiff continued to work approximately 25 hours a week, driving 25 minutes both to and from work, throughout the period under review. AR at 26.

Finally, Plaintiff argues in this section of her brief that her RFC is inconsistent with the definition of light work, because her RFC contains an additional limitation that she "change . . . position from sitting to standing and vice versa, for purposes of comfort, and with no more than one change in position every 20 minutes . . . ." *Doc. 19* at 6 (quoting AR at 21). As the Commissioner points out, however, "the ALJ did not find

---

[6] Plaintiff adds in her reply brief that her symptoms could reasonably have been attributed to her "underlying determinable impairment of severe and moderate spinal canal stenosis . . . ." *Doc. 22* at 3. The Court finds that the ALJ adequately considered this impairment in his determination under SSR 16-3p. ALJ Bentley found at Step Two that Plaintiff has a severe impairment of degenerative disc disease of the lumbar spine *with stenosis*, and he later explicitly considered the medical records finding severe and moderate spinal canal stenosis. AR at 22 (citing AR at 329, 368).

12

[Plaintiff] was capable of the full range of light work without restriction; rather, he found she could perform light work with a number of additional limitations, including a sit/stand option." *See Doc. 21* at 12. Ultimately, the Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of pain and other symptoms are supported by and linked to substantial evidence in the record. *See Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *4 (D.N.M. Oct. 25, 2017) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

**B.     The ALJ made sufficient findings of fact regarding Plaintiff's PRW.**

At Step Four, SSR 82-62 requires the ALJ to make findings of fact regarding: (1) the claimant's RFC; (2) the physical and mental demands of the claimant's PRW; and (3) that the claimant's "RFC would permit a return to his or her" PRW. *See* 1982 WL 31386, at *4; *Winfrey v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir. 1996). Plaintiff argues that the ALJ failed to obtain sufficient information at the second step of this analysis, specifically with respect to whether her PRW allowed a sit/stand option as described in her RFC. *See Doc. 19* at 9-11.

Plaintiff acknowledges that she performed PRW as a CNA with AmberCare Home Health Care (AmberCare) from 2008 through 2013. *See Doc. 19* at 10 (citing AR at 165-66). She also correctly notes that a CNA position does not normally include a sit/stand option, a limitation included in her RFC. *See id.*; *see also* AR at 21 (including a limitation in Plaintiff's RFC that she be allowed to change position from sitting to standing and back "every 20 minutes and without leaving the work station so as not to diminish pace or production"); AR at 57 (VE's testimony that a CNA position does not normally include a sit/stand option). Relying on both Plaintiff's and the VE's testimony,

13

however, the ALJ found that as Plaintiff performed her CNA position with AmberCare, she was allowed to work with a sit/stand option every 20 minutes as described in her RFC. *See* AR at 28, 57-58.

At the hearing, the ALJ asked the VE if Plaintiff could perform her PRW as a CNA with the RFC (light work with certain limitations), including the sit/stand option. AR at 57. The VE responded that she did not think so, because a CNA position is "normally not a sit/stand option job." AR at 57. The ALJ asked Plaintiff: "when you were working at [AmberCare], were you able to sit and stand on a regular basis, like every 20 minutes?" AR at 57. Plaintiff responded "Yes[,]" and her attorney did not follow up with any questions to clarify or qualify this response.[7] *See* AR at 58.

To determine whether a claimant can perform PRW, the ALJ asks the claimant "about work [she has] done in the past." *See* 20 C.F.R. § 404.1560(b)(2); *Richards v. Berryhill*, No. 16-CV-02899-CMA, 2017 WL 5664511, at *11 (D. Colo. Nov. 27, 2017). In fact, SSR 82-62 provides that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work." 1982 WL 31386, at *3. The ALJ may also "use the services of [VEs] . . . , or other resources, such as the "Dictionary of Occupational Titles [(DOT)] . . . to obtain evidence" the ALJ needs to determine whether the claimant can perform PRW given the RFC. 20 C.F.R. § 404.1560(b)(2). A VE may testify both to the physical and

---

[7] Notably, "[t]he burden is on the claimant to show that [her] impairment renders [her] unable to perform that work." *Richards v. Berryhill*, No. 16-CV-02899-CMA, 2017 WL 5664511, at *11 (D. Colo. Nov. 27, 2017) (quoting *Henrie v. U.S. Dep't of Health & Human Serv.*, 13 F.3d 359, 360 (10th Cir. 1993)).

14

mental demands of PRW as "actually performed . . . or as generally performed in the national economy." *Id.*

Here, Plaintiff testified at the hearing about her work as a CNA at AmberCare:

> CLMT: I worked taking – they send me out to their different homes and I would work with patients in their homes, do the dishes, cleaning. If I had to take them somewhere, I would take them to doctor's appointments.
> ALJ: And that was at [AmberCare]?
> CLMT: Yes.
> ALJ: And that was a CNA job?
> CLMT: Yes.

AR at 55. After the VE stated that CNAs cannot normally move from sitting to standing, the ALJ specifically queried Plaintiff about whether she was allowed to change positions from sitting to standing regularly, approximately every 20 minutes. AR at 57. She affirmed that she could.

Plaintiff attempts to manufacture a dispute about her responsibilities as a CNA with AmberCare by pointing out perceived inconsistencies in her Work History Report. *Doc. 19* at 10 (discussing AR at 267-73). In her Work History Report, Plaintiff listed several generic "Home Health Care Agency" positions without naming AmberCare specifically. AR at 267. She described one of these generic positions as entailing responsibilities of working with her "family [to] care for [her] brother" by using "machines to lift him[,] . . . help[ing] with laundry, cooking and groceries." *Doc. 19* at 11 (citing AR at 267). Her counsel now hypothesizes that this position described her duties at AmberCare. *Id.* The Court finds this supposition disingenuous, as Plaintiff did not testify that her position at AmberCare was at all related to her care for her brother, but "with *patients in their homes* . . . ." *See* AR at 55 (emphasis added). Instead, Plaintiff's responses to the ALJ's questions about her work at AmberCare were sufficient to

15

"obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations'" and clear up any question he may have had about her job duties described on the Work History Report. *See Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62, 1982 WL 31386, at *3).

In his decision, the ALJ noted that while the DOT classifies CNA "work as medium, semi-skilled work[,]"[8] the VE testified that the CNA job at AmberCare as Plaintiff testified that she actually performed it was "at the light exertional level" with an allowance for Plaintiff "to sit and stand on a regular basis every 20 minutes . . . ." AR at 28. Plaintiff cites no authority to support her argument that the ALJ erred in relying on Plaintiff's own testimony about how she performed her PRW and the VE's determination that she could perform the CNA position as she actually performed it at AmberCare. *See Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014) (upholding ALJ's conclusion that claimant could perform PRW where VE testified that claimant could perform the PRW with the restrictions in her RFC).

**C.      The ALJ did not err in finding that Plaintiff could return to her PRW.**

In her final argument, Plaintiff reiterates that the ALJ erred in relying on her testimony regarding her duties at AmberCare. *Doc. 19* at 12. She also asserts that Plaintiff actually performed the position at a sedentary level. *See id.* at 11, 12. Again, she bases this conclusion on the description of a generic home health care position in her work history report that describes how she helped her brother. *See id.* at 11 (citing AR at 269). As the Court found above, this argument rings hollow, and the Court rejects it.

---

[8] The DOT code for the CNA position is 355.674-014. *See* AR at 28.

## V. Conclusion

The Court finds that the ALJ adequately assessed Plaintiff's subjective complaints of pain and made sufficient findings of fact regarding her PRW. Plaintiff has failed to show reversible error.

Wherefore,

**IT IS ORDERED** that Plaintiff's Brief in Support of Motion to Remand or Reverse for Payment of Benefits, or in the Alternative, for Rehearing (*Doc. 19*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent